**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| TEMPESTT TUGGLE )<br>)<br>  Plaintiff, )<br>) Case No.<br>vs. )<br>)<br>ESSENTIAL INFORMATION, INC. ) **JURY TRIAL DEMANDED**<br>d/b/a UNKOCH MY CAMPUS )<br>)<br>  Serve at: )<br>)<br>  P.O. Box 19405 )<br>  Washington, DC 20036 )<br>)<br>and )<br>)<br>JASMINE BANKS )<br>)<br>  Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Tempestt Tuggle, by and through his undersigned attorney, and for her Complaint states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff Tempestt Tuggle is, and was at all times relevant herein, a resident of St. Louis County, State of Missouri, and a dark-skinned African-American female.

2. Defendant Essential Information, Inc. d/b/a Unkoch My Campus (hereinafter Unkoch My Campus), is and was at all times relevant herein, a Washington D.C. corporation licensed to do business in Missouri.

3. Defendant Jasmine Banks was the Executive Director of Defendant Unkoch My Campus, and was a resident of Arkansas who worked remotely from home.

4. Jurisdiction is proper in the Eastern District of Missouri, because Title VII is a federal law, and thus it involves a federal question.

1

5. Venue is appropriate in the Eastern Division of the Eastern District of Missouri, because Plaintiff was an employee of Defendant and worked at her home located in St. Louis County.

## STATEMENT OF FACTS

6. Founded in 1982 by Ralph Nader, Essential Information, Inc. is a non-profit, tax-exempt organization that is involved in a variety of projects to encourage citizens to become active and engaged in their communities.

7. The organization provides provocative information to the public on important topics neglected by the mass media and policy makers.

8. Essential Information, Inc. has published the Multinational Monitor Magazine, books and reports, sponsored investigative journalism conferences, provided writers with grants to pursue investigations and operated clearing houses which disseminate information to grassroots organizations in the United States and throughout the world.

9. UnKoch My Campus is a cooperative campaign project, fiscally sponsored by Essential Information, Inc., that supports students and professors working to expose the undue influence of industrial billionaire Charles Koch throughout American college and university departments.

10. Tempestt Tuggle was hired by Unkoch My Campus in the remote position of Co-Director. She worked from her home located at 6023 Cascade Drive, St. Louis, Missouri.

11. As Co-Director of Unkoch My Campus, Tuggle worked with Defendant Banks and communicated with each other remotely.

### i. *The Toxicity of Tuggle's Work Relationship with Banks*

12. On or August of 2020 Ms. Jasmine Banks found out that Plaintiff Tuggle is bisexual during a private conversation outside of work. Defendant Banks would then bring up in work settings that Plaintiff Tuggle is "sexually unfilled" due to her partners sexuality and that she needed to leave the relationship because it was toxic due to the nature of how Plaintiff Tuggle found out.

13. Banks describes herself as "a mother of 4 . . . and passionate supporter of her queer Black community." *See Meet the Team*, UNKOCH MY CAMPUS, http://www.unkochmycampus.org/about-2 (accessed Sept. 8, 2022).

14. Defendant Banks would intertwine work and private life during work hours by saying that Plaintiff Tuggle was dealing with a sexually unsatisfying situation and that she needed to leave the relationship. Plaintiff Tuggle stated that she would not leave the relationship because she does not mind her partners sexuality and that they share the cost-of-living expenses.

15. Plaintiff Tuggle further emphasized to Defendant Banks that abruptly ending a relationship would cause financial hardship due to her salary at the time.

16. Defendant Banks asked Plaintiff Tuggle what an ideal salary for Plaintiff Tuggle was to leave her partner.

17. On or around October of 2020, Plaintiff Tuggle received a raise from Defendant Banks. Defendant Banks continued to make comments about Plaintiff Tuggle leaving her relationship and that Defendant Banks always comes through on her promises after giving Plaintiff Tuggle the raise.

3

18. Defendant Banks would also comment on Plaintiff Tuggle's body during work setting, including by making comments about her breasts or how she looked in outfits during zoom meetings.

19. On or around July of 2021 Defendant Banks began to search for other employment opportunities to begin her transition from Executive Director of UnKoch My Campus.

20. During that time Defendant Banks assured Plaintiff Tuggle that Tuggle would replace Banks in her managerial role as Banks transitioned into to her new place of employment.

21. Defendant Banks would begin the transition process and would not follow through stating that she did not have capacity to complete the transition due to unforeseen health events.

22. Defendant Banks would tell Plaintiff Tuggle that she is setting up UnKoch My Campus, putting her life on the line as a light-skinned black woman because it is hard for dark skinned black women like Plaintiff Tuggle to be in leadership and maintain an organization.

23. On or around August 2021, Plaintiff Tuggle began seeing a therapist around this time as she was beginning to feel harassed and traumatized by Defendant Banks comments and actions throughout this transitional period.

24. On or around October of 2021, Plaintiff Tuggle visited Defendant Banks in her home state of Arkansas. During their encounter, Defendant Banks approached Plaintiff Tuggle with a proposition of engaging in sexual act with her and Defendant Banks' partner.

25. Plaintiff Tuggle denied Defendant Banks' advances stating that she was currently in a relationship and that she didn't see Defendant Banks or Defendant Banks' partner as a potential partner, but only as a friend and co-worker.

26. Defendant Banks continued to state that Plaintiff Tuggle was sexually unfulfilled due to her partners sexuality. Banks insinuated that Plaintiff Tuggle's partner was cheating while she was visiting in Arkansas and that's why Plaintiff Tuggle's partner was comfortable with Plaintiff Tuggle being in Arkansas for a visit.

27. Defendant Banks began attempting to groom Plaintiff Tuggle by making inappropriate comments to her and trying to destroy Plaintiff Tuggle's other working relationships and attempting to isolate her from friends and family by getting upset when Plaintiff Tuggle spent time around anyone else.

28. Defendant Banks would tell Plaintiff Tuggle that no one cares about her besides Defendant Banks because Plaintiff Tuggle grew up in foster care and the current people her in life are extractive.

29. Defendant Banks would tell Plaintiff Tuggle (during Thanksgiving 2021) that she would come to Saint Louis and give her a bubble bath in a AirBNB that Defendant Banks and her partner would rent, to which Plaintiff Tuggle would decline.

30. Defendant Banks would also tell Plaintiff Tuggle that she owed her because Defendant Banks was a light skin black woman and Plaintiff Tuggle is a darker skinned black woman and Defendant Banks was putting her neck on the line by going to bat for Plaintiff Tuggle at work.

31. Defendant Banks forced Plaintiff Tuggle to fire a contractor who was treated as an employee. Plaintiff Tuggle didn't agree with the termination, so Defendant Banks told her that she was required to terminate the contractor or lose her salary to share with the contractor.

32.     After the termination, Defendant Banks gave Plaintiff Tuggle a promotion, a raise in salary, purchased her a $250 Coach Brand gift card, and said that is how you become a manager of employees by knowing when to let people go.

33.     On or around December 2021, Plaintiff Tuggle lost her god mother and was with family when Defendant Banks continued to try to contact Plaintiff Tuggle to no avail. Defendant Banks became hostile and told her during a staff meeting that she was only reaching out because she wanted to purchase something for Plaintiff Tuggle from Coach. Plaintiff Tuggle responded that she didn't need Defendant Banks to buy her anything.

  ii.     **_Plaintiff Tuggle is Sexually Assaulted by Banks in Public_**

34.     Plaintiff Tuggle was sent on a work trip to Miami, Florida for a climate conference with Defendant Banks. Banks had arrived on Sunday, March 27, 2022.

35.     Throughout the nights of March 27-29, many of the conference attendees were either mingling and drinking alcohol at the beach, the hot tub, or at the hotel. Defendant Banks' drinking and her clinginess toward Plaintiff Tuggle made Tuggle uncomfortable, especially when Plaintiff conversed with other attendees.

36.     On the evening of March 29, 2022, Defendant Banks and Plaintiff Tuggle were both near the hotel swimming pool. An emotional Banks approached Tuggle lying down by the pool, and began to caress her feet. Banks told Tuggle that she wanted to take care of her and make her feel good. Tuggle was taken aback and asked Banks to stop.

37.     Tuggle emphasized to Banks that her statements were inappropriate, as she had done in the past.

38. As Plaintiff Tuggle got back into the pool, Defendant Banks placed her hands between Tuggle's thighs and inserted her finger into Tuggle's vagina. Banks continued to say how she loved Tuggle and that she wanted to take care of her and make her feel good.

39. Tuggle was shocked, and pushed Jasmine away. Tuggle then returned to her room.

40. On or around Wednesday, March 30, other conference attendees reported the assault to the conference administrators. Tuggle confirmed the accounts provided.

41. The conference administrators informed Jasmine that while UnKoch My Campus would still be allowed to participate in the remainder of the conference, she was no longer welcomed to the conference space or any other collective spaces.

42. After the meeting held by the conference attendees Jasmine then asked Plaintiff Tuggle to talk to her about the incident which she declined and stayed back with conference conveners and began to have an anxiety attack.

43. Conference conveners then switched Plaintiff Tuggle to a new room for the remainder of the conference for safety.

44. Plaintiff Tuggle was requested to attend a Zoom teleconference call in Defendant Banks' hotel room with board-member of UnKoch My Campus Nadya Dutchin (a light-skinned Latina female) and Avital Norman-Nathman (a Caucasian female), who were meeting with them remotely. Nayda proceeded to ask Tempestt what happened at the convention, which began agitating Tuggle.

45. When Dutchin then asked if Plaintiff Tuggle saw any behaviors that were inappropriate, and Plaintiff Tuggle spoke to Jasmine and told her that her actions with Plaintiff Tuggle was inappropriate and caused her emotional trauma.

7

46. Jasmine responded by saying she was sorry about the harm she caused and that she now knows how she impacted Plaintiff Tuggle.

47. Plaintiff Tuggle then left the meeting with board member Dutchin and Norman-Nathman after Tuggle refused to continue with their conversation. Dutchin then mentioned that they would discuss with the lawyers who also happen to be the fiscal sponsor for UnKoch My Campus.

**COUNT I: SEXUAL HARASSMENT, HOSTILE WORK ENVIRONMENT, AND RETALIATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT UNKOCH MY CAMPUS**

COMES NOW Plaintiff Tempestt Tuggle, and for her claim of employment discrimination in violation of Title VII states as follows:

48. Plaintiff adopts and reincorporates all above paragraphs of this Complaint here again.

49. Plaintiff Tuggle is, and was at all times relevant herein, a dark-skinned African-American female.

50. Within the scope of her employment, Plaintiff Tuggle received inappropriate comments about her body by her supervisor, Defendant Banks.

51. Within the scope of her employment, Defendant Banks would make numerous attempts to convince Plaintiff Tuggle that she is sexually unfilled due to her partner's sexuality and that Tuggle needed to leave the relationship.

52. Within the scope of her employment, Defendant Banks would make numerous sexual advances toward Plaintiff Tuggle, to which Plaintiff would continue to turn down and view as being inappropriate within a workplace setting.

53. Within the scope of her employment, Plaintiff Tuggle encountered quid pro quo harassment from her supervisor, Defendant Banks in the following ways:

   a. Defendant Banks offered Plaintiff Tuggle a higher wage in return that Tuggle would end her relationship with her current partner;

   b. Defendant Banks had invited Plaintiff Tuggle to engage in sexual intercourse with her and Banks' partner in exchange for Plaintiff's time and company;

   c. Defendant Banks had offered to buy Plaintiff Tuggle gifts; and

   d. Defendant Banks had offered to take care of Plaintiff Tuggle in exchange for sexual favors

54. Within the scope of employment, during a work conference in Miami, Florida, Defendant Banks, without Plaintiff's consent, touched Plaintiff Tuggle in a sexually inappropriate manner, intending to cause Plaintiff bodily harm and/or offensive contact.

55. Defendant Unkoch My Campus retaliated by:

   a. Conducting a meeting with Plaintiff Tuggle about the sexual assault allegations in the same room as Defendant Banks, her alleged assaulter;

   b. Coercing her into signing a non-disclosure agreement; and

   c. Immediately placing Plaintiff Tuggle on paid leave, after her attorney sent a letter of representation to Defendant, while at the same time retaining Defendant Banks as an employee.

56. Plaintiff Tuggle suffered damages as a result of this sexual harassment and hostile work environment, as well as wage loss, severe emotional distress, and a short period of unemployment.

### COUNT II: RACIAL DISCRIMINATION IN VIOLATION OF TITLE VII AGAINST DEFENDANT UNKOCH MY CAMPUS

COMES NOW Plaintiff Tempestt Tuggle, and for her claim of employment discrimination in violation of Title VII states as follows:

57. Plaintiff adopts and reincorporates all above paragraphs of this Complaint here again.

58. Plaintiff Tempestt Tuggle is, and was at all times relevant herein, a dark-skinned African-American female.

59. Plaintiff Tuggle asserts that she was racially discriminated against by UnKoch My Campus due to the following:

    a. Defendant Banks refused to promote Plaintiff Tuggle as Executive Director for Defendant UnKoch My Campus, because Plaintiff was a dark-skinned black woman;

    b. Defendant Banks emphasized to Plaintiff Tuggle that her ineffectiveness in leadership and in her ability to maintain an organization was due to Plaintiff being a dark-skinned black woman;

    c. Despite Defendant UnKoch My Campus' left-of-center stance on social and political issues, the organization promotes racial superiority within the workplace.

60. Plaintiff Tuggle suffered damages as a result of this discriminatory conduct, as well as wage loss, severe emotional distress, and a short period of unemployment.

### COUNT III: TORTIOUS ASSAULT AGAINST DEFENDANT JASMINE BANKS

COMES NOW Plaintiff Tempestt Tuggle, and for her claim of tortious assault states as follows:

10

61. Plaintiff restates all above paragraphs here again.

62. During a work conference in Miami, Florida, Defendant Banks, without Plaintiff's consent, touched Plaintiff in a sexually inappropriate manner, intending to cause Plaintiff bodily harm and/or offensive contact.

63. The actions taken by Defendant Banks were undertaken with an evil motive and a reckless indifference to human life.

64. Plaintiff Tuggle has suffered severe physical and emotional damages arising from this act of sexual assault. Plaintiff has suffered medical bills for treatment of her injuries as well as lost wages, loss of earning capacity and reputational harm. Plaintiff has suffered and will in future continue to suffer damages as a result of this conduct.

**COUNT IV: TORTIOUS BATTERY AGAINST DEFENDANT JASMINE BANKS**

COMES NOW Plaintiff Tempestt Tuggle, and for her claim of tortious battery against Defendant Jasmine Banks, states as follows:

65. Plaintiff restates all above paragraphs here again.

66. During a work conference in Miami, Florida, Defendant Banks, without Plaintiff's consent, touched Plaintiff in a sexually inappropriate manner, intending to cause Plaintiff bodily harm and/or offensive contact.

67. During a work conference in Miami, Florida, Defendant Banks did in fact cause Plaintiff Gerhardt bodily harm and/or offensive contact.

68. The actions taken by Defendant Banks were undertaken with an evil motive and a reckless indifference to human life.

69. Plaintiff Tuggle has suffered severe physical and emotional damages arising from this act of sexual assault. Plaintiff has suffered medical bills for treatment of her injuries

as well as lost wages, loss of earning capacity and reputational harm. Plaintiff has suffered and will in future continue to suffer damages as a result of this conduct.

**COUNT V: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS (IIED) AGAINST DEFENDANT JASMINE BANKS**

COMES NOW Plaintiff, Tempestt Tuggle, and for her claim of intentional infliction of emotional distress against Defendant Jasmine Banks, states as follows:

70. Plaintiff restates all above paragraphs here again.

71. Defendant Bank's conduct at issue included repeatedly making unwanted sexual propositions to Plaintiff and sexually assaulting Plaintiff.

72. Defendant Bank's conduct was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and should be regarded as atrocious and utterly intolerable in a civilized community for the forgoing reasons:

73. Defendant Bank's actions were made with reckless indifference to the lives of others, including Plaintiff Tuggle.

74. Plaintiff Tuggle has suffered severe physical and emotional damages arising from this act of sexual assault. Plaintiff has suffered medical bills for treatment of her injuries as well as lost wages, loss of earning capacity and reputational harm. Plaintiff has suffered and will in future continue to suffer damages as a result of this conduct.

**CONCLUSION**

WHEREFORE, Plaintiff Gerhardt prays judgement against all Defendants, and each of them, jointly and severally, with all other Defendants for damages as follows:

a. For actual damages in a sum in excess of Twenty-Five Thousand Dollars ($ 25,000.00) as is found fair and reasonable by a jury to compensate her for her injuries and damages;

b. For Aggravated Damages (Punitive Damages) or damages for the aggravating circumstances as will serve to punish and deter Defendants from future wrongdoing;

c. For Plaintiff's attorney fees.

d. For all other damages pled together with their costs and for such other relief as this Court deems just and proper under the circumstances.

Respectfully submitted,

**OTT LAW FIRM**

*/s/ Joseph A. Ott*

Joseph A. Ott, #67889

*/s/ Mark Edward Blankenship Jr.*

Mark E. Blankenship Jr., #73123

3544 Oxford Blvd
Maplewood, MO 63143
Telephone:  (314) 293-3756
Facsimile:  (314) 689-0080
joe@ott.law
mark@ott.law
*Attorneys for Plaintiff*